1
2
3
4
5
6
7

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN PATRICK STOKES, | CASE NO. CV-18-00083 RJB |
| Plaintiff, | ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND DISMISSING CASE |
| v. | |
| HSBC, MACKOFF KELLOGG LAW FIRM,CALIBER HOME LOANS, LSF8 PARTICIPATION TRUST, US BANK N.A, FIRST AMERICAN TITLE COMPANY OF MONTANA INC., HOUSEHOLD FINANCE CORPORATION II, HOUSEHOLD FINANCE CORPORATION III, ROBERT DRUMMOND, JAMES MANLEY, DANIEL COFFMAN, MICHAEL LILLY, BENJAMIN HURSH, JOHN and JANE DOES, 1-10 (to be named), | |
| Defendants. | |

        This matter comes before the Court on the Plaintiff's Application to Proceed in District

Court without Prepaying Fees or Costs.  Dkt. 1.  The Court has considered the pleadings filed

regarding the application and the remaining record.

1    On May 8, 2018, Plaintiff, acting *pro se,* filed a proposed complaint (Dkt. 2) and an

2 Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP application")

3 (Dkt. 1).  Plaintiff asserts claims for violations of the Racketeer Influenced and Corrupt

4 Organizations Act ("RICO"), fraud, extortion, "misprision of felony," slander of title, quiet title

5 and "related claims" in connection with the Defendants' alleged actions in the foreclosure

6 proceedings on Plaintiff's home and documents filed in bankruptcy cases and other court cases.

7 Dkt. 2.  Plaintiff filed a Notice of Correction, indicating that the Defendant listed as "Daniel

8 Coffman" was mistyped and should be "Danielle Coffman."  Dkt. 7.  For present purposes, the

9 Court will consider the claims asserted in the proposed complaint as being asserted against

10 Danielle Coffman, not Daniel Coffman.

11    In making the decision on the IFP application, the undersigned will first review the

12 proposed complaint to determine if the Court has subject matter jurisdiction over the case and

13 then whether the complaint is frivolous and malicious as required under 28 U.S.C. § 1915 (e)(2).

14    **Standards on *Sua Sponte* Dismissal.**  Federal courts are courts of limited jurisdiction.

15 *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).  Jurisdiction is a threshold

16 issue that must be raised *sua sponte*.  *Id.*, at 94-95.  A case may be dismissed for lack of subject

17 matter jurisdiction under Fed. R. Civ. P. 12 (1).

18    **Review of the Complaint.**  The Court has carefully reviewed the complaint in this

19 matter.  Because Plaintiff filed this complaint *pro se*, the Court has construed the pleadings

20 liberally and has afforded Plaintiff the benefit of any doubt.  *See Karim-Panahi v. Los Angeles*

21 *Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988).

22    The proposed complaint is difficult to understand and Plaintiff fails to clearly articulate

23 which claim he is making against which defendant.  Plaintiff alleges that in July 2009, he and his

24

ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND
DISMISSING CASE - 2

1    wife obtained a loan for around $198,500 from Weyerhauser Mortgage Company.  Dkt. 2, at 3.

2    He maintains that monthly payments were made to HSBC through May of 2009.  *Id.*

3        Plaintiff asserts that he filed for "Chapter 11, business bankruptcy in March 2009,

4    Bankruptcy Case No 09-60250 to stay [a] levy on a $3.8 million unlawful slander judgment, and

5    listed all assets and liabilities . . .[a]ssets were approximately $10,400,000.00."  *Id.*  He alleges

6    that on March 20, 2009, HSBC filed a "blank forged, fabricated Proof of Claim."  *Id.*  Plaintiff

7    states that the "U.S. Trustee converted to Chapter 7."  *Id.*  He maintains that the Trustee filed an

8    adversary proceeding, in part, to sell the residence located at 12887 Raven Way, Bigfork,

9    Montana ("Raven Way residence") together with 80 acres.  *Id.*  Plaintiff asserts that HSBC "filed

10   a blank endorsement, undated as a Proof of Claim."  *Id.*  He alleges that the "US Trustee

11   disallowed the blank endorsement and demanded the original note."  *Id., at 3.*  Plaintiff maintains

12   that HSBC "defaulted" and the property was sold to his wife, Pamela Stokes.  *Id., at 4.* Plaintiff

13   states that HFC II "then presented a Proof of Claim alleging they now owned the original note."

14   *Id.*  Plaintiff asserts that he "challenged the Proof of Claim as false and fabricated and the note

15   presented by HFC II was not assigned or payable to HFC II . . . [but] was endorsed to HFC III."

16   *Id.*  He alleges that the "forged fabricated assignment was provided by HSBC to HFC II" using

17   "wire and telephonic communications to transmit and US Mail on all forgeries."  *Id.*  He again

18   maintains that the property was sold to Pamela Stokes.  *Id.*

19       Plaintiff states that the "John Stokes Bankruptcy BK # 09-60250 closed in 2012 and

20   Stokes was fully discharged from all debt."  *Id.*  He alleges that "Robert Drummond has now

21   placed that entire case before the Ninth Circuit Appeals Court, California, and all documents

22   thereof. Including said forgeries."  *Id.*

23

24

1    Plaintiff alleges that "Caliber Homes began demanding and attempted extortion for

2    payments . . . on the disallowed and forged note or face trustee sale" on the Raven Way

3    residence.  *Id.*, at 5.  He asserts that "LSF8, through First American Title and U.S. Bank began

4    foreclosure proceedings," and that his wife, Pamela Stokes filed a "Chapter 13 Bankruptcy, No.

5    14-61170 to stay the sale."  *Id.* Plaintiff maintains that "LSF8 submitted the same 'BLANK'

6    endorsement of the note as a Proof of Claim" and "presented yet another false and fabricated

7    Proof of Claim, through their attorneys, payable and endorsed to HFC II, for the purposes

8    fraudulently lifting the stay and proceeding to foreclosure."  *Id.*  Plaintiff asserts that LSF8

9    obtained relief "[t]hrough the filing of false documents."  *Id.*

10    Plaintiff alleges that he filed a "civil complaint in Lake County DV-14-223" and "[t]hat

11    case is pending review by the United States Supreme Court."  *Id.*, at 5.  He maintains that he

12    obtained defaults in this case for approximately $2.3 million each.  *Id.*  Plaintiff asserts that

13    "James Manley, acting as District Judge, refused to reduce to Money Judgment in disobedience

14    to the confirmed Bankruptcy plan and order and issued an Order of Abeyance."  *Id.*, at 6.

15    Plaintiff states that "he was again forced to petition the bankruptcy court for Chapter 13

16    protection from unlawful trustee sale."  *Id.*  He asserts that Judge Manley "without leave of the

17    bankruptcy court, set a hearing for the purposes of dismissing the defaults and allowing the

18    defendants to answer, 1½ years after default," without motion and in violation of the bankruptcy

19    stay.  *Id.*  Plaintiff alleges that Judge Manley had ex-parte contract with defendants' attorneys

20    and "said defendants filed an answer within 2 days."  *Id.*

21    Plaintiff acknowledges that he missed a creditors meeting in his bankruptcy case and

22    alleges that Robert Drummond, "acting Chapter 13, had ex-parte contact with defendants," told

23    them he would move for dismissal of the bankruptcy petition, "and they would then be free to

24

1    foreclose on Plaintiff." *Id.* Plaintiff asserts that Robert Drummond "had actual knowledge

2    defendants assignments of Note were forgeries . . . a felony under 18 [§] USC 4." *Id.,* at 7. He

3    alleges that on "August 18, 2016, Defendants allegedly conducted a Trustee Sale." *Id.* Plaintiff

4    asserts that LSF8 has "attempted to change the locks on Stokes residence twice." *Id.,* at 8.

5    Plaintiff asserts that Benjamin Hursh "appeared as attorney for First American Title, in

6    the Lake County Case and appeared on August 10, 2016 in John Stokes['] Bankruptcy case. At

7    all time[s], Benjamin Hursh had actual knowledge of the forgeries and fabrications." *Id.* at 7.

8    He maintains "Danielle Coffman and Michael Lilly and their clients had actual knowledge of the

9    forged and fabricated Notes. Lender defendants admitted by defaults the forgeries and

10   fabrication." *Id.* He alleges that "Defendants HSBC, US BANK N.A., HFC II, HFC III, Caliber

11   Home Loans, LSF8 have a pattern and practice of mortgage fraud." *Id.*

12   Plaintiff maintains that "all Defendants did acquire and/or maintain, directly or indirectly,

13   an interest in or control of a RICO enterprise . . . [and] all had and still do have actual knowledge

14   of the forgeries and have failed to come forward and committed a a [sic] felony by their silence."

15   *Id.,* at 7-8. He alleges that the RICO predicate acts occurred "during the nine (9) calendar years

16   preceding May 4, 2018." *Id.,* at 8.

17   Plaintiff asserts that "Defendants maliciously and willfully disclosed a proposed

18   settlement offer to the Montana Supreme Court during appeal, that so prejudiced the court, that

19   said court labeled [Plaintiff] a Vextaious [sic] Litigant. . . [Plaintiff] is now deprived of his

20   constitutional rights of equal access to the courts of Montana, forever." *Id.*

21   Plaintiff makes eight claims, referred to as counts in the proposed complaint. Dkt. 2, at

22   9-14.

23

24

ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND
DISMISSING CASE - 5

1    In count one, Plaintiff asserts that the Defendants "Mackoff Kellogg Law Firm – MT and

2    HSBC knowingly submitted a false, forged and fabricated proof of claim in BK 09-60250 under

3    penalty of perjury, fine and imprisonment to obtain property of Plaintiff."  Dkt. 2, at 9.  Plaintiff

4    asserts that HSBC is not "a holder in due course, or actual owner of the note . . . [or] in the chain

5    of title of said note."  *Id.*

6    Count two claims that "HBC II and their attorney(s) knowingly submitted a false, forged

7    and fabricated proof of claim in BK 09-60250 payable to HFC III, under penalty of perjury."  *Id.*

8    In count three, Plaintiff asserts that "HFC II allegedly assigned the note owned by HFC

9    III to LSF8 and attempt to deprive [Plaintiff] Stokes of property and foreclose using a knowingly

10   false and fabricated assignment.  Committing the act of fraud upon the court and plaintiff.

11   Felony Grand Theft."  *Id.*

12   Count four claims that "LSF8 and their attorney knowingly submitted a false, forged and

13   fabricated proof of claim in Federal Bankruptcy Court BK # 14-61170-13, payable to HFC II,

14   handwritten in blue ink.  The document is a total fabrication and fraud and intended to deceive

15   the court and plaintiffs."  *Id.,* at 10.

16   In count five, Plaintiff claims that in July of 2016, Judge Manley, acting as a state judge,

17   "issued an order of Abeyance only as to John and Pam Stokes and obstructed and denied Court

18   Order of (Pam BK)."  He asserts that Judge Manley "had actual knowledge of the filed

19   bankruptcy petition, the requirement to stay all state civil proceedings. . . [and] Manley's action

20   deprived Stokes of approximately $4.6 million in assets to be paid and distributed to Stokes

21   creditors."  *Id.*

22   Count six claims that "Defendants attempted extortion 4 [four] times against the Stokes

23   demanding $275-400k in threat of loss of property through Trustee sale and numerous demand

24

ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND
DISMISSING CASE - 6

letters.  At no time did defendants posse [sic] a lawful note." *Id.,* at 9-10.  It further claims that

on "LSF8, US Bank N/A. and First American Title did conduct an unlawful trustee sale." *Id.*, at

10.  Plaintiff asserts that HFC II did not have ownership and possession of the original note "and

any assignment to a trustee for purposes of foreclosure is a fraud." *Id.,* at 11.

Plaintiff maintains in count seven that "Defendants violated USC 11 363 [sic] and

conducted a state hearing on August 10, 2016, without leave of the Federal Bankruptcy Court for

the purpose of removing approximately $4,600,000.00 from the estate." *Id.*  He further claims

that "Defendants are subject to damages and penalties under 11 362 (K) and (h) [sic] for actual

damages of $4.6 million and punitive damages under 11 USC 362 (h) (k) [sic] and treble RICO

damages." *Id.*

Count eight claims that Plaintiff has been financially and emotionally damaged by

Defendants' actions.  *Id.*

In count nine, Plaintiff asserts that he has "been forever barred from equal access to the

State Courts of Montana.  A clear violation of Civil Rights and emotional and economic harm."

*Id.,* at 12.

Plaintiff seeks damages, "quiet title in favor of Plaintiff," and "immediately recommend

investigation by the appropriate authorities and licensing agencies of the named attorneys for

disbarment proceedings, sanctions and other appropriate relief."  Dkt. 2, at 12-14.

**Judicial Notice.** "A court may take judicial notice of matters of public record." *Lee v.

City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  Plaintiff's proposed complaint makes

reference to several cases in both federal and state court.

The Court takes judicial notice of two opinions from the Montana State Supreme Court

that appear to shed some light on Plaintiff's (sometimes difficult to understand) assertions.  On

November 17, 2017, the Montana State Supreme Court issued an unpublished decision denying

an appeal brought by Plaintiff and affirming decisions by Judge Manley in the Lake County,

Montana District Court case number 14-223.  *Stokes v. First American Title Co.*, 2017 MT 274N,

DA 17-0161.  That case was brought against two Defendants in this case: First American Title

Company of Montana, Inc., and US Bank Trust N.A., as Trustee for LSF8 Master Participation

Trust.  *Id.*  Two other Defendants in this case acted as lawyers for Defendants in that case:

Michael Lilly and Danielle Coffman.  *Id.*  In any event, the opinion provided:

> John and Pamela Stokes (the Stokes) appeal the summary judgment order
> dismissing this action, entered by the Twentieth Judicial District Court, Lake
> County, Honorable James Manley presiding. The Stokes sought a declaratory
> judgment regarding their rights in their home and to enjoin the property's
> foreclosure. The Stokes' counsel withdrew, and a chain of events then unfolded
> that complicated the proceedings. The Stokes moved for default against the
> Appellees and, subsequently, on July 15, 2016, John Stokes filed for Chapter 13
> bankruptcy protections. Unaware that a bankruptcy action had been filed, the
> District Court set a hearing on the Stokes' request for default, which was held on
> August 10, 2016. The Stokes failed to attend. On August 12, 2016, the United
> States Bankruptcy Court dismissed John Stokes' bankruptcy petition for his
> failure to attend a hearing. The District Court, now aware of the bankruptcy
> proceeding, set aside the default at the request of Appellees and the Stokes'
> property was sold in foreclosure. John Stokes then moved to re-open his
> bankruptcy proceeding. The District Court entered summary judgment in favor of
> First American and U.S. Bank Trust on Stokes' claims and dismissed the action.
> The Stokes appeal.
>
> The Stokes make a broad range of often outlandish accusations about how
> their case, and their past cases, have been handled. They assert, with no citation or
> explanation, that Appellees are "a mortgage scam enterprise and laundering front
> for the Drug Cartel" who have "fabricated" and "forged" evidence. These
> allegations aside, it is difficult to ascertain exactly what legal issues the Stokes
> are appealing. It appears they argued that the District Court lacked jurisdiction, given
> the 11 U.S.C. § 362(a) automatic stay arising from the bankruptcy petitions filed
> by both the Stokes. The District Court determined the stay related to John Stokes'
> bankruptcy did not prevent the court from ruling on an action brought by the
> debtors. *See, e.g., Eisinger v. Way*, 229 B.R. 11, 13 (B.A.P. 9th Cir. 1998)
> (*citations omitted*) ("the automatic stay does not prohibit a defendant in an action
> brought by a plaintiff/debtor from defending itself in that action."). The Stokes
> argue the cases relied on by the District Court are factually distinguishable, but
> provide no citation to authority or legal analysis. They assert that Pamela Stokes'

ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND
DISMISSING CASE - 8

bankruptcy likewise removed jurisdiction from the District Court, but provide no citations to authority or cogent argument.

  The Stokes also assert that Judge Manley was biased against them. . . . We reject the allegation of bias for lack of any factual basis.

  Finally, the Stokes argue that the District Court improperly vacated the default. The default was vacated following a hearing the Stokes failed to attend, and they assert they were unable to attend due to medical reasons. The Stokes offer no citations to the record and advance no supported legal arguments.

  The appellant bears the burden of establishing error, and for us to render an informed and legally correct opinion, the appellant must provide legal argument, citations to authority, and citations to the record in support of their arguments. *See State v. Gomez,* 2007 MT 111, ¶¶ 31-34, 337 Mont. 219, 158 P.3d 442 (*citations omitted*). The Stokes' briefing lacks all three, and is nearly unintelligible. We conclude the Stokes failed to meet their burden of establishing error.

*Stokes v. First American Title Co.*, 2017 MT 274N, DA 17-0161.  In addition to affirming Judge Manley's decisions, that same day, the Montana Supreme Court issued an opinion and order, declaring Stokes a vexatious litigant and requiring anything he files in a Montana state district court or the Montana Supreme Court be either (1) pre-approved by the court in which he seeks to file or, alternatively, (2) "certified by a licensed Montana lawyer in good standing as meritorious under M.R. Civ. P. 11." *Stokes v. First American Title Co.*, 389 Mont. 245 (2017).  Noting that in *Motta v. Granite Cty. Comm'rs*, 370 Mont. 469 (2013), Montana adopted the Ninth Circuit Court of Appeals' five factor test announced in *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1058 (9th Cir. 2007) to determine whether a pre-filing order is justified, the Montana Supreme Court found that:

  Under the first [*Motta*] factor, Stokes' history of litigation in the district courts is significant and has entailed vexatious, harassing, or duplicative lawsuits. Stokes has been before this Court ten times.  In several of these cases, Stokes was represented by counsel, and there was no assertion that the appeals had been taken unreasonably. However, Stokes' pro se appeals have repeatedly been found to be insufficiently presented, including a failure to provide a sufficient record or a failure to raise cognizable arguments, and have usually been affirmed in a memorandum opinion based upon the failure to meet the appellant's burden. In this matter, we conclude that Mr. and Mrs. Stokes' appeal was taken without substantial or reasonable grounds. As noted in our memorandum opinion, their

ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND DISMISSING CASE - 9

briefing lacked citations to the record, citations to authority, and cognizable legal argument.

Further, the briefing asserted numerous serious and unsupported accusations against party opponents, judges, and officials. With no citation to the record, Mr. and Mrs. Stokes alleged fraud, fabrication, collusion, harassment, and intimidation by their bankruptcy trustees; bias and prejudice by Judge Manley; and that Appellees were a "scam enterprise and laundering front for the Drug Cartel...." The brief also stated that John Stokes personally removed a majority of the judges in Flathead County and implied a threat to initiate a federal suit against Judge Manley in California. We find such serious and wholly unsupported statements to be harassing and vexatious.

Appellees also attached complaints in four other suits brought by Stokes pro se, one which was entitled "COMPLAINT FOR EMBEZLEMENT [sic], EXTORTION AND DAMAGES." They include outlandish allegations of a harassing and abusive nature. Appellees quote from district court orders expressing frustration with Stokes' litigation tactics:

> Stokes' brief is a litany of confused "facts," in which he attempts
> to intertwine at least three separate lawsuits ... Stokes wholly fails
> to respond to the Plaintiffs' argument that Stokes has pled no actual
> cause of action ... Once again, Stokes mixes motions, relies on
> outdated case law and in general impermissibly attempts to re-
> litigate matters ... Stokes seeks to add the individual attorneys and
> the law firm as third party defendants. He alleges that the
> individuals and the law firm have prepared false affidavits, have
> withheld documents in a separate lawsuit, and have a financial
> interest in continuing the litigation ... Once again, the Court is
> faced with superfluous pleadings, which have no basis in fact or
> law and which consume limited Court resources.

*Gardner v. Stokes*, No. DV 07-0729(B) (Mont. 11th Judicial Dist. July 17, 2008). A different district court judge stated, "Stokes has filed an incomprehensible motion, accompanied by an equally convoluted brief ..." and concluded it was "yet another example of [Stokes'] blatant disregard of legal procedures and rules." *Anderson v. Stokes*, No. DV 01-023C (Mont. 11th Judicial Dist. April 28, 2008).

Stokes did not file a response to the motion seeking his declaration as a vexatious litigant, but argued in his appellate reply brief that, by citing his filings in other cases, Appellees have offered inadmissible evidence in support of their motion. However, this Court may take judicial notice of other court proceedings, and we do so here. M. R. Evid. 202. While it would be preferable for a pre-filing order to be entered by a trial court upon fact-finding, we cannot ignore vexatious actions, particularly those that occur in this Court. We conclude the first factor of the *Motta* test is satisfied.

Under the second factor, we find Stokes does not have an objective good faith expectation of prevailing in the foreclosure matter that was the subject of his appeal. His pro se motions and briefs were procedurally unrecognizable and lacking in proper legal arguments. One federal judge commented: "Stokes is not an attorney, and while he zealously argues his positions, the record of his

1    unsuccessful results in litigation is uniform and speaks for itself." *In re Stokes*,
No. 09-60265-11, 2009 WL 3062314 at *19, 2009 Bankr. LEXIS 3030 at *52

2    (U.S. Bankr. D. Mont. Sep. 21, 2009).

3          The third factor, whether Mr. Stokes is represented by counsel, is an
important consideration here and affects the breadth of the remedy ordered. The

4    vexatious behavior exhibited by Stokes has occurred prevalently while he was
acting pro se, exemplified by the present appeal, wherein his counsel withdrew

5    and Stokes thereafter filed a number of harassing pleadings while representing
himself. Similarly, in *Motta*, we concluded that the pre-filing order at issue, which

6    restricted Motta's pro se filings, was narrowly tailored and appropriately entered.
*Motta*, ¶¶ 17, 22.

7          Under the fourth factor, it is clear from the actions described above that
Stokes has caused needless expense to other parties and posed an unnecessary

8    burden on the courts. In the litigation at issue in this appeal, Stokes filed an action
to prolong the foreclosure process, and then later argued the court lacked

9    jurisdiction to address the very action he initiated, an effort that merely caused
confusion and turmoil.

10         Finally, we conclude that sanctions other than a pre-filing order would be
inadequate. Stokes has previously litigated over significant debt and initiated

11    bankruptcy proceedings. A financial sanction of costs or fees would appear to
give a litigant with Stokes' history little pause in pursuing further vexatious

12    behavior in the courts. Indeed, district courts have imposed such fees on Stokes in
the past, with little or no discernible impact. In his appellate briefing here, Stokes

13    has already threatened future litigation against the same parties and the presiding
judge. Further, given the broad range of litigation Stokes has brought in multiple

14    judicial districts, we see no way to effectively narrow the pre-filing order to a
particular type of claim.

15         We conclude the applicable *Motta* test is satisfied and that the necessity of
a pre-filing order has been established when Stokes is litigating pro se. Consistent

16    with the Montana Constitution, an order has a direct relationship to the state
interest of protecting other parties from the unnecessary expense of litigating

17    against Stokes and protecting the courts from the unnecessary expenditure of
judicial resources.

18    *Stokes v. First American Title Co*., 389 Mont. 245, at 247-250 (2017).

19         The Court also takes judicial notice of records filed in the U.S. Supreme Court.  Dated

20    March 8, 2018, John and Pamela Stokes filed an application to proceed IFP and a Petition for a

21    Writ of Certiorari with the U.S. Supreme Court.  *Stokes v. First American Title Co*., __ U.S. ___

22    (May 18, 2018)   In their petition, the Stokes reference both the Montana State Court's decision

23    affirming the trial court and the decision declaring him a vexatious litigant.  *Id.*  The petition

24

ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND
DISMISSING CASE - 11

1   alleges fraudulent documents were used in the foreclosure action, including the allegation that

2   the "Defendants proceeded to a Trustee Sale based on forged false assignments." *Id.*  It also

3   raises issues around proceedings before Judge Manley and the bankruptcies.  *Id.*  Further, it

4   asserts that Mr. Stokes' constitutional and civil rights have been violated by the Montana

5   Supreme Court's vexatious litigant order.  *Id.*  No decision on the Stokes' application to proceed

6   IFP or on their petition have been made by the U.S. Supreme Court.

7   **Analysis of Whether the Court has Subject Matter Jurisdiction and the Rooker-**

8   **Feldman Doctrine.**  Federal courts are courts of limited jurisdiction.  *Steel Co. v. Citizens for a*

9   *Better Environment*, 523 U.S. 83 (1998).  Jurisdiction is a threshold issue that must be raised *sua*

10  *sponte*.  *Id.*, at 94-95.  "The Rooker–Feldman doctrine instructs that federal district courts are

11  without jurisdiction to hear direct appeals from the judgments of state courts.  Congress, in 28

12  U.S.C. § 1257, vests the United States Supreme Court, not the lower federal courts, with

13  appellate jurisdiction over state court judgments."  *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir.

14  2012)(*citing Lance v. Dennis*, 546 U.S. 459, 463 (2006)(*per curiam*)).  "The clearest case for

15  dismissal based on the Rooker–Feldman doctrine occurs when a federal plaintiff asserts as a

16  legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court

17  judgment based on that decision."  *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir.

18  2007).  "The doctrine bars a district court from exercising jurisdiction not only over an action

19  explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal."

20  *Cooper,* at 777 (*internal quotations and citation omitted*).

21  Plaintiff's claims either directly seek relief from the Montana Supreme Court decisions or

22  are the "de facto equivalent" of such an appeal and so this U.S. District Court does not have

23  jurisdiction to consider the case.  *Cooper,* at 777.  Plaintiff's attempt to add parties, or recast the

24

ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND
DISMISSING CASE - 12

facts or claims is unhelpful.  A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir.2003). As part of that refusal, it must also refuse to decide any issue raised in the suit that is "inextricably intertwined" with an issue resolved by the state court in its judicial decision.  *Id.,* at 1158.  All issues raised in this case are "inextricably intertwined" with issues resolved by the Montana State Supreme Court's decisions.

Further, these issues are now on appeal with the U.S. Supreme Court, stripping this Court of jurisdiction to consider the issues raised here.  To the extent Plaintiff is attempting to challenging findings and orders of the bankruptcy courts here, this case should also be dismissed because the undersigned does not have jurisdiction to consider these challenges.  Plaintiff did not follow the proper bankruptcy appellate procedures. *See* Fed. Rule Bankr. Proc. 8002.

This Court does not have subject matter jurisdiction to consider this case and so the proposed complaint should be dismissed.

**Review of Whether Case is Frivolous and Malicious under 28 U.S.C. § 1915**. Plaintiff's decision to file this additional complaint when these issues are on appeal with the U.S. Supreme Court was "frivolous and malicious." It is duplicative of his prior suits and is a continuation of his harassing behavior toward judicial officers, officers of the court, and opposing parties from other cases.  This case should also be dismissed under 28 U.S.C. § 1915 (e)(2).

**Standard for Granting IFP Application.**  The district court may permit indigent litigants to proceed IFP upon completion of a proper affidavit of indigency.  *See* 28 U.S.C. §

1915(a).  However, the court has broad discretion in denying an application to proceed *in forma pauperis*.  *Weller v. Dickson*, 314 F.2d 598 (9th Cir. 1963), *cert. denied* 375 U.S. 845 (1963).

**Decision on IFP Application**. While Plaintiff's showing of poverty is sufficient, this Court does not have jurisdiction to consider this case.  Moreover, Plaintiff's proposed complaint is frivolous and malicious.  Both these grounds require dismissal of the case.  Accordingly, this Court should exercise its broad discretion and deny Plaintiff's IFP application (Dkt. 1).

**Leave to Amend**.  Unless it is absolutely clear that no amendment can cure the defect, a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.  *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.1995).

In this case, any attempt by Plaintiff to amend the complaint would be futile.  Plaintiff should not be afforded leave to amend his complaint.

**IFP on Appeal.**  In the event that Plaintiff appeals this order, and/or appeals dismissal of this case, IFP status should be denied by this Court, without prejudice to Plaintiff to file with the Ninth Circuit U.S. Court of Appeals an application to proceed IFP.  This Court certifies, under 28 U.S.C. § 1915 (a)(3), that an appeal, if any, is not taken in good faith.

**Future filings**.  Other than a Notice of Appeal, any filings in this case in the future will be docketed by the Clerk but not acted upon by the Court.

### <u>ORDER</u>

It is **ORDERED** that:

- Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 1) **IS DENIED**;

- This case **IS DISMISSED**;

ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND DISMISSING CASE - 14

- In the event that Plaintiff appeals this order, and/or appeals dismissal of this case, IFP status **IS DENIED** by this Court, without prejudice to Plaintiff to file with the Ninth Circuit U.S. Court of Appeals an application to proceed IFP;

- This Court certifies, under 28 U.S.C. § 1915 (a)(3), that an appeal, if any, **IS NOT TAKEN IN GOOD FAITH**; and

- Other than a Notice of Appeal, any filings in this case in the future will be docketed by the Clerk but not acted upon by the Court**.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 17th day of May, 2018.


ROBERT J. BRYAN
United States District Judge

ORDER DENYING APPLICATION TO PROCEED WITHOUT PREPAYING FOR FEES OR COSTS AND DISMISSING CASE - 15